IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL TANNER ) | |
| ) | Case No. 21 CV 2713 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge John Robert Blakey |
| ) | |
| BOARD OF EDUCATION OF FREMONT ) | |
| SCHOOL DISTRICT 79, COUNTY OF ) | |
| LAKE, STATE OF ILLINOIS ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In this employment discrimination case, Plaintiff Michael Tanner brings claims of discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and breach of contract against his former employer, Defendant Board of Education of Fremont School District 79 (the "Board"). [16]. The Board moves to dismiss Plaintiff's ADEA discrimination claim and breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the Court grants the Board's motion to dismiss [18] in part and denies it in part.

**I.    Facts**

The following facts are taken from Plaintiff's amended complaint, [16], and are assumed to be true for purposes of the Board's motion to dismiss. The Board governs the Fremont School District in Mundelein, Illinois and is responsible for the financial

1

and organizational governance of the schools in the district. [16] ¶¶ 8–9. In July 2010, Plaintiff began his employment with the Board as the Director of Business Services. *Id.* ¶ 10. When the Board terminated him on or about October 25, 2018, Plaintiff was 56 years old. *Id.* ¶ 11.

In April 2017, Plaintiff entered into a five-year, performance-based agreement with the Board to serve as the Fremont School District's Associate Superintendent for Finance and Operations, beginning July 1, 2017, through June 30, 2022. *Id.* ¶¶ 35, 36; [16-1] at 1.[1] The agreement required the Board to provide Plaintiff with a written evaluation of his performance during the term of the agreement based upon Plaintiff's rapport with the Board and Superintendent, the performance of Plaintiff's duties set forth in the agreement, and "such other factors of appraisal as may be established by the Board." [16-1] at 2. The agreement goes on to list Plaintiff's primary responsibilities as the Associate Superintendent for Finance and Operations, all of which relate to overseeing the financial operations of the Fremont School District. *Id.* The agreement further states that Plaintiff's evaluation "will align to PERA compliant process" and that fifty percent of the overall performance evaluation would be based on the "Local Growth Model." *Id.*

In July 2017, the Board hired Dr. William Robertson as the superintendent. [16] ¶ 13. Plaintiff alleges that, upon Dr. Robertson's hire, the Board engaged in a

---

[1] Plaintiff attached a copy of the employment agreement to his amended complaint, which the Court may consider on a 12(b)(6) motion to dismiss because it is considered part of the pleadings. *See* Fed. R. Civ. P. 11(c); *Geinosky v. City of Chi.*, 675 F.3d 743, 746 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.").

pattern of discrimination against its older employees, including him by, among other things, demeaning, humiliating, and intimidating them; making age-based employment decisions such as disciplining older workers under false pretenses; treating younger employees more favorably; and refusing to take action against employees who engaged in harassment and discrimination. *Id.* ¶ 14. Specifically, on a "nearly daily and regular basis," Dr. Robertson referred to Plaintiff as "old man," "grandpa," "crusty," "fossil," and referred to Plaintiff's car and phone as "ancient." *Id.* ¶ 15. Plaintiff alleges that Dr. Robertson also began to create a paper trail to justify Plaintiff's termination and that in January 2018, Dr. Robertson disciplined Plaintiff based on a fabricated charge that he had acted in a hostile manner toward another Board employee. *Id.* ¶¶ 16, 17. Of the eighteen employees over the age of forty employed by the Board, Dr. Robertson's forced out eleven of those employees through similar tactics. *Id.* ¶ 18.

In the spring and fall of 2018, Plaintiff had three conversations with the Board's president, Jason Bonds, to complain about Dr. Robertson's behavior. *Id.* ¶ 18. In the summer of 2018, Plaintiff also complained to Board Secretary Gabriela Whipple about Dr. Robertson's harassment. *Id.* Despite Plaintiff's complaints, the Board terminated Plaintiff's employment on October 25, 2018. *Id.* ¶ 20. At the time of his termination, Plaintiff was 56 years old. *Id.* ¶ 11. Although Plaintiff had been terminated, Dr. Robertson and the Board falsely stated that Plaintiff resigned. *Id.* ¶¶ 19–22.

3

On March 7, 2019, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 4. The EEOC issued its right to sue letter on February 19, 2021. *Id.* ¶ 5. Plaintiff initiated this lawsuit on May 19, 2021, [1], and amended his complaint on August 16, 2021, [16]. In the amended complaint, Plaintiff asserts claims against the Board for discrimination (Count I) and retaliation (Count II), both under the ADEA, and breach of contract (Count III) and seeks backpay, liquidated damages, reinstatement, compensatory damages, punitive damages, costs, and attorneys' fees. *Id.* at 7–8. The Board's 12(b)(6) motion to dismiss seeks dismissal of Counts I and III. [18].

## II. Legal Standard

To survive a motion to dismiss, a complaint must allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Plausibility, however, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Id.* A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the complaint, this Court draws all reasonable inferences in the plaintiff's favor and accepts all well-pleaded

4

allegations as true; the Court need not, however, accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).

## III. Analysis

As a preliminary matter, the Board moves to dismiss Plaintiff's discrimination claim to the extent it asserts a disparate impact claim under the ADEA and moves to strike Plaintiff's request for punitive damages for his breach of contract claim. [18] ¶¶ 18, 32–35. In his response brief, Plaintiff abandons any discrimination claims based on a disparate impact theory and concedes he cannot seek punitive damages. [22] at 1 n.1. Accordingly, the Court grants the Board's motion to dismiss Count I insofar it asserts a disparate impact theory of discrimination and strikes Plaintiff's request for punitive damages under his breach of contract claim. The Court addresses the Board's remaining arguments below.

### A. ADEA Discrimination Claim (Count I)

#### 1. Timeliness

The Board argues that, because Plaintiff filed his EEOC Charge on March 7, 2019, any unlawful employment practice that occurred prior to May 12, 2018, is time-barred. [18] ¶¶ 28–31. The Board also moves to strike all allegations of discriminatory conduct that occurred prior to May 12, 2018. *Id.* ¶ 31. Plaintiff counters that all events that occurred prior to May 12, 2018, can be considered under the continuing violation doctrine because they relate to the Board's "pattern" of age-based discrimination against its older employees. [22] at 9–10.

5

Before a plaintiff brings an ADEA claim, he or she must file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice. *See* 29 U.S.C. § 626(d)(1)(B); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) ("In Illinois, an employee may sue under the ADEA . . . only if he files a charge of discrimination within 300 days of the alleged 'unlawful employment practice.'"). Claims for events that occurred more than 300 days before the filing of the charge are not timely.

As Plaintiff correctly notes, under the continuing violation doctrine a plaintiff can obtain relief for a time-barred act by "linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 2002). The Supreme Court refined this doctrine in *National Railroad Passenger Corp. v. Morgan*, however, holding that it does not apply to easily identifiable discrete acts—such as a termination or a failure to promote—because each discrete act of discrimination "constitutes a separate unlawful employment practice." 536 U.S. 101, 114 (2002).[2] "[D]iscrete acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. The Court held, however, that this same reasoning did not apply to discrimination claims based upon a hostile work environment, because such claims are "composed of a series of separate acts that

---

[2] Although *Morgan* examined the continuing violation doctrine under Title VII, *Morgan* is equally applicable to the ADEA. Both statutes have a similar limitations period, *compare* 42 U.S.C. § 5000e-5(a) *with* 29 U.S.C. § 626(d)(1)(B), and courts assess the timeliness of claims brought under both statutes together. *See Nagle v. Village of Camulet Park*, 554 F.3d 1106, 1121 n.4 (7th Cir. 2009). In addition, other courts in this district have applied *Morgan* to the ADEA. *See, e.g.*, *Outley v. City of Chicago*, 407 F. Supp. 3d 752, 761 (N.D. Ill. 2019) (applying *Morgan* to ADEA claim); *Jones v. Chi. Bd. of Educ.*, No. 11-cv-8326, 2013 WL 1499001, at *4 (N.D. Ill. Apr. 10, 2013) (same); *Maze v. Towers Watson Am., LLC*, No. 11-cv-8120, 2012 WL 568683, at *4 (N.D. Ill. Feb. 21, 2012) (same).

6

collectively constitute one unlawful employment practice" and are timely so long as "any act falls within the statutory time period." *Id.* at 115, 120 (internal quotations omitted).

In this case, Plaintiff filed his charge with the EEOC on March 7, 2019. [16] ¶ 4. Thus, any discrete discriminatory acts that occurred more than 300 days before that date—May 12, 2018—are time-barred. In his amended complaint, Plaintiff only alleges two discrete discriminatory acts: his January 2018 discipline and October 2018 termination; and Plaintiff does not assert a hostile work environment theory of discrimination under the ADEA.[3] Of these two discrete discriminatory acts, only Plaintiff's October 2018 termination remains actionable because it is the only discrete event that occurred within the 300-day limitations period. Although Plaintiff argues that the January 2018 discipline is part of a pattern of age-based discrimination by the Board and can be considered timely under the continuing violation doctrine, *Morgan*'s dictate is clear: a plaintiff "seeking redress for a series of discrete discriminatory acts cannot avoid the effect of the limitations period by arguing that the discrete acts are 'plausibly or sufficiently related.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (quoting *Morgan*, 536 U.S. at 114). Accordingly, the

---

[3] Although the Seventh Circuit has assumed without deciding that hostile work environment claims are actionable under the ADEA, s*ee Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005), the only age-based harassment described with any specificity in the amended complaint are Dr. Robertson's comments referring to Plaintiff as "old man," "grandpa," "crusty," and "fossil." [16] ¶¶ 14–15. Even assuming *arguendo* that Plaintiff intended to assert a hostile environment claim, the current allegations, without more, fail to assert misconduct severe or pervasive enough to serve as the factual basis for such a claim. *See Tyburski v. City of Chi.*, 964 F.3d 590, 601 (7th Cir. 2020) ("Even insults specifically referencing age do not necessarily rise to the level of actionable harassment.").

Court grants the Board's motion to dismiss Plaintiff's ADEA discrimination claim to the extent that it is based upon the January 2018 discipline.

The Court, however, denies the Board's motion to strike the untimely allegations from the complaint. Although these allegations cannot serve as the basis for Plaintiff's ADEA discrimination claim, they can be considered as background evidence to his timely claims. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."); *West v. Ortho-McNeil Pharmaceutical Corp.*, 405 F.3d 578, 581 (7th Cir. 2005) ("We have interpreted [*Morgan*] as allowing time-barred acts as support for a timely claim."). Accordingly, the Court denies the Board's motion to strike Plaintiff's allegations of discriminatory conduct that occurred prior to May 12, 2018.

### 2. Sufficiency of Plaintiff's ADEA Discrimination Claim

In its motion to dismiss, the Board makes various arguments challenging the factual sufficiency of Plaintiff's amended complaint. *See* [18] ¶¶ 22 ("Plaintiff has not alleged any connection between alleged stray age-related comments and his separation from the School District in October of 2018."), 23 ("Plaintiff has not satisfied the third and fourth elements [of a *prima facie* ADEA discrimination claim]."), 25 ("Plaintiff has not provided a connection about his age and his separation from employment."), 27 ("Plaintiff does not satisfy the elements of an ADEA claim because he fails to provide plausible facts that could lead to a reasonable inference Plaintiff's age was the 'but-for' cause of his alleged involuntary separation from

8

employment."); *see also* [23] at 2 ("The Board has not argued that Plaintiff has to prove his claims now, but he does have to plead enough facts to set forth the basic elements to state a claim."). The Boards' arguments, however, are unavailing.

In an employment discrimination claim, a complaint "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Thus, at the pleading stage, the plaintiff is "not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014); *see also Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017) ("Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory."). Rather, "a plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017); *see also Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) ("A litigant's best shot at stating a plausible employment discrimination claim is to explain, in a few sentences, how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because of* her membership in a protected class.").

Here, Plaintiff brings a discrimination claim against the Board under the ADEA, which makes it unlawful for an employer to take adverse action against an

9

employee who is forty years or older "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Drawing all inferences in Plaintiff's favor (as required on a motion to dismiss), Plaintiff's amended complaint plausibly alleges a claim for discriminatory termination under the ADEA. Plaintiff alleges that he was a member of a protected class because he was 56 years old at the time of termination on or about October 25, 2018. [16] ¶¶ 11, 20. Plaintiff also asserts that upon Dr. Robertson's hire, the Board began taking age into account with respect to employment decisions and started treating younger employees favorably compared to older workers. *Id.* ¶ 14. He further alleges that Dr. Robertson's actions caused eleven employees over the age of 40 to leave their employment with the Board. *Id.* ¶ 18. Plaintiff also claims that Dr. Robertson subjected him to age-based comments such as "old man," "grandpa," "crusty," and "fossil" on a near daily basis and that Dr. Robertson believed Plaintiff too old to be helpful to the Board. *Id.* ¶¶ 15, 16. Also, as the superintendent, Dr. Robertson was ostensibly a decision maker, because Dr. Robertson disciplined Plaintiff in January 2018 based on a "fabricated charge," which was one of several disciplinary actions that Plaintiff experienced until his termination. *Id.* ¶ 17. Finally, Plaintiff alleges that after his termination in October 2018, Dr. Robertson and the Board falsely stated that Plaintiff had resigned. *Id.* ¶ 21. These allegations, taken together, allege enough "factual content that allows the court to draw the reasonable inference" that he was terminated because of his age. *Iqbal*, 556 U.S. at 678. That is, Plaintiff identified the type of discrimination (termination because of age), when it occurred (on or around October 25, 2018), by whom (Dr. Robertson), and

the facts or circumstances that led Plaintiff to believe that age was the reason for his termination. *See Clark*, 709 Fed. Appx. at 828; *Kaminski*, 23 F.4th at 777. Federal pleading standards require nothing more at this stage of the proceedings.

The Board, however, argues that Plaintiff's allegations concerning the discrimination experienced by other employees is not relevant and cannot be considered in a motion to dismiss. Not so. First, these allegations, if proven, can provide circumstantial evidence of discriminatory intent. *See e.g.*, *Burks v. Union Pac. R. Co.*, 793 F.3d 694, 700 (7th Cir. 2015) (noting evidence raising an inference of discriminatory intent can include "behavior toward or comments directed at other employees in the protected group."). Second, these allegations are in Plaintiff's complaint and on a motion to dismiss the court "must consider the complaint in *its entirety*." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added). At the pleading stage, the complaint "need only allege enough facts to allow for a *plausible* inference that the adverse action was connected to [a plaintiff's] protected characteristic," *Kaminski*, 23 F.4th at 777, and the allegations concerning other older employees help make it plausible that Plaintiff's termination was because of his age. Accordingly, the Court denies the Board's motion to dismiss Count I of the amended complaint.

### B. Breach of Contract (Count III)

Finally, the Board moves to dismiss Plaintiff's breach of contract claim arguing that Plaintiff's multi-year contract is void as a matter of law because it contains no

11

goals and indicators of student performance and academic improvement as required under 105 ILCS 5/10-23.8a.

Under the Illinois School Code, "school districts may only employ principals, assistant principals, and other school administrators under either a contract for a period not to exceed one year or a performance-based contract for a period not to exceed 5 years, unless the provisions of Section 10.23-8b of this Code or subsection (e) of Section 24A-15 of this Code otherwise apply."[4] 105 ILCS 5/10-23.8a. The Illinois School Code requires that performance-based contracts under 105 ILCS 5/10-23.8a "be linked to student performance and academic improvement attributable to the responsibilities and duties of the principal, assistant principal, or administrator," and requires that "[e]ach performance-based contract shall include the goals and indicators of student performance and academic improvement" used by the local school board to evaluate the administrator's performance. *Id.* Finally, the statute mandates that no "performance based-contract shall be extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals contained in the contract have been met," which contemplates that a performance-based contract under the statute include these goals and indicators of student performance and academic improvement at the time of the contract's execution. *Id.* Thus, 105 ILCS 5/10-23.8a requires that a performance-based contract for principals,

---

[4] Section 10-23.8b and subsection (e) of section 24A-15 of the Illinois School Code apply only to principals and assistant principals. *See* 105 ILCS 5/10-23.8b (discussing the reclassification of principals and assistant principals upon the non-renewal of their contract); 105 ILCS 5/24A-8(e) (discussing the extension of a principal's or assistant principal's contract where a school district fails to evaluate the principal or assistant principal during the term of the contract). Because Plaintiff was not a principal or assistant principal, these exceptions to 105 ILCS 5/10-23.8a do not apply.

12

assistant principals, and other school administrators specifically identify the "goals and indicators of student performance and academic improvement" used by a local school to evaluate the performance of the principal, assistant principal, or other school administrator. *Id.* Performance-based contracts for school administrators that do not comply with the statute's requirements are null and void. *See Shlay v. Montgomery*, 802 F.2d 918, 922 (7th Cir. 1986). And a "municipal contract which is legally prohibited or beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action." *McMahon v. City of Chi.*, 789 N.E.2d 347, 352 (Ill. App. Ct. 2003).

Here, Plaintiff was employed as an administrator for the Fremont School District and his employment agreement was for a term of five years (July 1, 2017, through June 30, 2022). [16] ¶ 36, [16-1] at 1. Plaintiff's agreement states that he would be evaluated according to the criteria set forth in the agreement, which consists of his rapport with the Board and the superintendent, his performance of various financial-related duties as an Associate Superintendent for Finance and Operations, and "such other factors of appraisal as may be established by the Board." [16-1] at 2. The agreement further states that his "evaluation will align to [*sic*] PERA compliant process and will have 50 percent of the overall performance evaluation based on the Local Growth Model." *Id.* The agreement does not define the terms "PERA compliant process" and "Local Growth Model," and does not otherwise contain any other evaluation criteria relating to student performance and academic improvement as required by the statute.

13

Although there is no dispute that Plaintiff was employed as a school administrator, *see* [22] at 2, Plaintiff argues that 105 ILCS 5/10-23.8a does not govern his employment agreement with the Board because his main functions as an Associate Superintendent were limited to overseeing the financial and business operations of the Fremont School District. [22] at 11. Plaintiff points to the statute's language requiring performance-based contracts be "linked" to student performance and academic improvement "attributable" to an administrator's duties. Relying on *Schau v. Board of Education of Peoria Public School Dist. No. 150*, No. 11-1262, 2014 WL 1716246 (C.D. Ill. May 1, 2014), he argues that his duties did not "directly impact" student performance and, thus, 105 ILCS 5/10-23a does not apply to him, [22] at 11–12.

In *Schau*, the defendant school board moved in *limine* to limit the damages available in a breach of contract lawsuit brought by a school comptroller, arguing that the contract at issue was void because it did not contain goals and indicators of student performance and academic improvement as required by 105 ILCS 5/10-23.8a. *Schau*, 2014 WL 1716246, at *2. The *Schau* Court denied the school board's motion, finding that 105 ILCS 5/10-23.8a only applied to multi-year contracts of administrators "whose responsibilities and duties involve student performance and academic improvement through instructional leadership, planning, operation, and evaluation of the educational program at the school." *Id.* Because nothing in the record indicated that student performance and academic improvement were

14

attributable to plaintiff's duties as a comptroller/treasurer, the *Schau* Court held that 105 ILCS 5/10-23.8a did not apply to plaintiff's contract. *Id.*

Plaintiff's reliance on *Schau* is misplaced. As an initial matter, Plaintiff's argument contradicts what is alleged in his amended complaint, *see* [16] ¶ 36 ("The contract was a valid, five-year performance-based contract under 105 ILCS 5/10-23.8a."), and a plaintiff cannot amend the complaint in a response brief. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (noting "the axiomatic rule that a plaintiff may not amend his complaint in his response brief.").

In any event, the *Schau* Court's interpretation of 105 ILCS 5/10-23.8a does not control here. Nothing in the plain language of the statute limits its application to school administrators "whose responsibilities and duties involve student performance and academic improvement through instructional leadership, planning, operation, and evaluation of the educational program at the school." *Schau*, 2014 WL 1716246, at *2. Rather, the statute explicitly applies to all "principals, assistant principals, and other school administrators" and requires that multi-year performance-based contracts "be linked to student performance and academic improvement attributable to the responsibilities and duties of the . . . administrator" and that the school board evaluate the administrator's performance in accordance with the goals and indicators included in the contract itself. 105 ILCS 5/10-23.8a. It also clearly states that the performance-based contract must contain the goals and indicators of student performance and academic improvement that a school board will use to evaluate the

15

school administrator's performance. The statute does not exclude school administrators whose main functions are limited to the business and financial aspects of operating a school district (which, of course, indirectly effect student performance and academic improvement).

Next, Plaintiff avers that, even if the statute controls, his employment agreement meets the statute's requirements because it mandates that his evaluation comply to a "PERA compliant process" and be based in part on a "Local Growth Model." [22] at 12–13. Citing *Hayes v. Elementary School District No. 159*, No. 10 C 7095, 2011 WL 1059890, at *5 (N.D. Ill. March 21, 2011), he argues that these terms may constitute the evaluation criteria based on student performance and academic improvement required under the statute. This argument fares better because the Court cannot determine whether these criteria satisfy the statute's requirements based on the pleadings alone, thus foreclosing dismissal at the pleading stage.

In *Hayes*, the performance-based contract at issue made express reference to "student performance and academic improvement goals" that were to be "established by mutual agreement" between the administrator and the school board. 2011 WL 1059890, at *5. The court in *Hayes* declined to dismiss the breach of contract claim because it could not determine from the pleadings alone whether the parties had later reached mutual agreement on the statutorily required "student performance and academic improvement goals" in an addendum or other written agreement. *Id*. Although Plaintiff's employment agreement here makes no mention of any future meeting with the Board to establish the goals and indicators of student performance

16

and academic improvement used to evaluate Plaintiff's performance, the agreement does mandate that Plaintiff's evaluation align to a "PERA compliant process" and that the evaluation be based in part on a "Local Growth Model." The pleadings do not indicate what these terms mean but they could theoretically entail many things including the goals and indicators of student performance and academic improvement required under 105 ILCS 5/10-23.8a. Thus, it is premature to find that Plaintiff's agreement with the Board was *ultra vires* and void as a matter of law.

The Board, however, contends that Plaintiff's agreement contains no express mention of the terms "goals and indicators" or "student performance" and cites *Woods-Clendening v. Bd. of Educ.*, No. 02 C 3578, 2002 WL 1732921, at *1 (N.D. Ill. July 25, 2002) to argue that Plaintiff's agreement violates the requirements of the statute. [23] at 11-12. The Court disagrees. First, *Woods-Clendening* is inapposite because that case involved a procedural due process challenge to a school administrator's termination; the validity of a performance-based contract under 105 ILCS 5/10-23.8a was not at issue in that case. *See* 2002 WL 1732921, at *1. Second, the statute does not mandate that the contract use the express terms "goals and indicators" or "student performance". Rather, an administrator's performance-based contract must contain the goals and indicators of student performance and academic improvement attributable to the administrator's duties that will be used to evaluate the administrator's performance under the agreement. As discussed above, the Court is unable to determine at the pleading stage whether the "PERA compliant process" and "Local Growth Model" are the required "goals and indicators of student

17

performance and academic improvement." If these terms include goals and indicators of student performance and academic improvement attributable to Plaintiff's duties as an Associate Superintendent for Finance and Operations, then the statute's requirements are satisfied. Accordingly, the Court denies the Board's motion to dismiss Count III of the amended complaint.[5]

---

[5] In his response brief, Plaintiff requests leave to amend Count III to assert an entirely new claim for promissory estoppel and to clarify that Plaintiff alleges that his employment agreement with the Board was a single-year contract. [22] at 14–15. In light of the Court's denial of the Board's motion to dismiss count III, this issue is moot. In any event, the Court will not consider Plaintiff's request for leave to amend unless he files a separate motion requesting such relief, attaching his proposed amendment.

performance and academic improvement." If these terms include goals and indicators of student performance and academic improvement attributable to Plaintiff's duties as an Associate Superintendent for Finance and Operations, then the statute's requirements are satisfied. Accordingly, the Court denies the Board's motion to dismiss Count III of the amended complaint.[5]

---

[5] In his response brief, Plaintiff requests leave to amend Count III to assert an entirely new claim for promissory estoppel and to clarify that Plaintiff alleges that his employment agreement with the Board was a single-year contract. [22] at 14–15. In light of the Court's denial of the Board's motion to dismiss count III, this issue is moot. In any event, the Court will not consider Plaintiff's request for leave to amend unless he files a separate motion requesting such relief, attaching his proposed amendment.

performance and academic improvement." If these terms include goals and indicators of student performance and academic improvement attributable to Plaintiff's duties as an Associate Superintendent for Finance and Operations, then the statute's requirements are satisfied. Accordingly, the Court denies the Board's motion to dismiss Count III of the amended complaint.[5]

---

[5] In his response brief, Plaintiff requests leave to amend Count III to assert an entirely new claim for promissory estoppel and to clarify that Plaintiff alleges that his employment agreement with the Board was a single-year contract. [22] at 14–15. In light of the Court's denial of the Board's motion to dismiss count III, this issue is moot. In any event, the Court will not consider Plaintiff's request for leave to amend unless he files a separate motion requesting such relief, attaching his proposed amendment.

## IV. Conclusion

For the reasons explained above, the Court grants Defendant's motion to dismiss [18] in part and denies it in part. The Court dismisses Count I to the extent it relies upon Plaintiff's time-barred January 2018 discipline and a disparate impact theory of discrimination and strikes Plaintiff's request for punitive damages. The Court otherwise denies Defendant's motion, thereby leaving intact Count I (to the extent it relies on Plaintiff's October 2018 termination), Count II (which was not subject to Defendant's motion to dismiss), and Count III. If Plaintiff seeks to amend his complaint, Plaintiff shall file a motion seeking leave and attaching the proposed amended complaint on or before July 19, 2022. In the absence of any further amendment, the Board shall answer all remaining claims on or before August 2, 2022. All other case management dates stand.

Dated: July 5, 2022                         Entered:

_____
John Robert Blakey
United States District Judge

19